UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES WILSON JR.,

    Plaintiff,        Civil Action No. 12-cv-10268

  v.           District Judge John Corbett O'Meara
              Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [9] AND
DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12]**

Plaintiff James Wilson Jr. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security ("Commissioner")

denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.

(Dkt. 1, Compl.; Dkt. 7, Transcript ("Tr.").)  This matter is before the Court on cross-motions for

summary judgment (Dkt. 9, 12), which were referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkt. 3).

**I.  RECOMMENDATION**

Plaintiff primarily asserts that his disability decision must be reversed or remanded because

the Administrative Law Judge (ALJ) did not comply with the treating-source rule.  (Dkt. 9, Pl.'s

Mot. Summ. J. at 4-9.)  Defendant Commissioner of Social Security ("Commissioner") asks the

Court to affirm his decision because the ALJ provided "good reasons" for how he weighed the

opinion evidence.  (Dkt. 12, Def.'s Mot. Summ. J. at 7-10.)  For the following reasons, this Court

finds that the ALJ failed to adequately explain why he discounted Plaintiff's treating source physician.  Further, the Court finds that the ALJ should review his credibility determination.  The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be GRANTED to the extent it seeks a remand, that Defendant's Motion for Summary Judgment (Dkt. 12) be DENIED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be REMANDED.

## II.  BACKGROUND

Plaintiff has a high-school education.  (Tr. 34.)  For about five and one-half years before the onset of his alleged disability Plaintiff had worked as a website designer.  (Tr. 34.)  Prior to that time, Plaintiff worked as a customer service representative and had done other customer service work fielding telephone calls.  (Tr. 35-36.)  Plaintiff testified that he had also done work as a driver and some day labor work as a stock clerk.  (Tr. 36.)  Due to problems with his back, Plaintiff testified that he has not performed any work for pay since December 2009.  (Tr. 34.)

### A.  Procedural History

On April 22, 2010, Plaintiff applied for Disability Insurance Benefits ("DIB") asserting that he became unable to work on December 21, 2004.  (Tr. 21.)  The claim was initially denied on August 24, 2010.  (*Id.*)  Thereafter, Plaintiff filed a written request for a hearing on August 27, 2010.  (*Id.*)  Plaintiff appeared with counsel and testified at a hearing held on March 22, 2011, in Livonia, Michigan before Administrative Law Judge Henry Perez, Jr.  (Tr. 21, 31-50.)  Melody Henry, a vocational expert (VE), also appeared at the hearing.  (*Id.*)  Upon the advice of counsel, Plaintiff amended his alleged onset date to December 20, 2009.  (*Id.*)

In an April 8, 2011 decision, ALJ Perez concluded that Plaintiff was not disabled.  (Tr. 23-

2

27.)  His decision became the final decision of the Commissioner on November 21, 2011 when the

Social Security Administration's Appeals Council denied Plaintiff's request for review.  (Tr. 1.)

Plaintiff filed this action on January 20, 2012.  (Dkt. 1, Compl.)

### B.  Medical Evidence

Plaintiff has a medical history of neck pain, back pain and diabetes.

On January 12, 2010 Plaintiff had an MRI of his cervical spine.  (Tr. 181.)  Results of the

MRI showed mild spinal stenosis and moderate to marked bilateral neural foramen narrowing at C7-

T1. (Tr. 181.)  Additionally, the MRI indicated small to moderate disc osteophyte complex eccentric

to left at C6-C7 with mild spinal stenosis and mild to moderate bilateral neural foramen narrowing.

(*Id*.)  The MRI also showed moderate disc osteophyte complex on right at C4-C5 with marked right

neural foramen narrowing at C4-C5.  (*Id.*)  Plaintiff had an MRI of his lumbar spine on March 1,

2010 which showed moderate broad based central disc herniation at L4-L5. (Tr. 182.)  Further, the

MRI showed mild to moderate spinal stenosis and moderate bilateral neural foramen narrowing at

L4-L5.  (*Id*.)  Additional findings included small to moderate disc herniation on the left at L5-S1.

(*Id.*)  This and degenerative change, the report indicated, lead to mild to moderate left neural

foramen narrowing at L5-S1. (*Id*.)

On May 10, 2010, Dr. Michael White, Plaintiff's primary treating physician, completed a

medical source statement regarding Plaintiff's ability to do work-related activities.  (Tr. 184-186.)

Dr. White indicated that he had been treating Plaintiff from September 18, 2007 until the date on the

statement, May 10, 2010.  (Tr. 184.)  Regarding exertional activities, Dr. White indicated that

Plaintiff could occasionally lift 10 pounds,  frequently lift less than 10 pounds, stand and/or walk

less than 2 hours in an 8-hour work day, must alternate every 10-15 minutes between sitting and

standing, and is limited in his upper and lower extremities in both pushing and pulling. (Tr. 184-185.) With respect to postural limitations, Dr. White indicated that Plaintiff could occasionally climb and balance, but never kneel, crouch, crawl or stoop. (Tr. 185.) With respect to manipulative limitations, Dr. White indicated that Plaintiff could only perform reaching on a very little basis. (*Id*.) Dr. White indicated that Plaintiff was unable to sustain work activity for an 8-hour work day with normal breaks for a 40-hour work week. (Tr. 186.) Dr. White also indicated that he found Plaintiff's allegations of pain and his inability to sustain complete activities due to muscle fatigue or as side effects of medication to be credible. (*Id*.)

On June 14, 2010, Plaintiff was evaluated by Dr. Douglas Lee, M.D. (Tr. 200-201.) Dr. Lee concluded that Plaintiff presented with neck pain with disc herniation and C7 radiculopathy. (Tr. 201.) Dr. Lee also noted some essential tremor and low back pain with spinal stenosis and disc herniations. (Id.) Dr. Lee indicated that Plaintiff was afraid of getting an epidural steroid because of being diabetic and therefore there were not many treatment options left. (*Id*.) Dr. Lee recommended that Plaintiff meet with Dr. Bono regarding surgical options, though Dr. Lee did not think that Plaintiff needed surgery at that time. (*Id*.) Another option that Dr. Lee recommended was acupuncture. (*Id*.)

On July 24, 2010 an internal medicine examination was performed on Claimant by Dr. S. Obri, M.D., an internist, at HCC Evaluations. (Tr. 175-180.) Claimant was being seen for an alleged disability due to neck pain, back pain and diabetes. (Tr. 175.) In general, Dr. Obri noted that Plaintiff had fatigue, neck pain, back pain and dry mouth. (*Id*.) With respect to Plaintiff's neurology, Dr. Obri noted that Plaintiff has "neck pain with no radiation. He has back pain with radiation to the right leg with numbness and tingling in the right leg." (*Id*.) Upon neurological

examination, Dr. Obri noted the following:

> The patient is alert, awake and oriented X3, cranial nerves II to XII are grossly intact. Deep tendon reflexes are normal. Gait and sensation are intact. Straight leg raising is negative. The patient is able to walk on heels and toes. He can squat and stand from squatting. He is left-handed. The right hand grip is 60-lbs; left is 40-lbs. There are paravertebral muscle spasms in the lumbar and cervical spine.

(Tr. 176.) Dr. Obri's assessment was: 1) chronic neck pain with history of spinal stenosis; 2) chronic back pain with history of herniated disc; 3) diabetes; and 4) hypertension. (*Id*.)

On July 27, 2010, Plaintiff had imaging done of his lumbar and cervical spine. (Tr. 179-180.) Dr. Villarosa noted minimal degenerative narrowing of the facet joints at L4-L5, L5-S1. (Tr. 179.) Dr. Villarosa's impression was that Plaintiff had mild degenerative arthritis of the lumbar spine. (*Id*.) With respect to the cervical spine, Dr. Villarosa noted a minimal degenerative narrowing of the facet joints at the mid and lower cervical spine. (Tr. 180.) Dr. Villarosa's impression was that Plaintiff had degenerative arthritis of the visualized cervical spine and recommended follow up on a clinical basis. (*Id*.)

On November 4, 2010, Plaintiff was evaluated by Dr. Lee with regard to a possible trial of acupuncture to relieve pain in his neck and low back. (Tr. 215-216.) Dr. Lee determined that Plaintiff had multiple areas of pain including trouble with meridian dysfunction. (Tr. 215.) Moreover, Dr. Lee reported that Plaintiff had a history of C7 radiculopathy on the left and spinal stenosis with multiple disc herniations. (*Id*.) Dr. Lee discussed the nature of acupuncture with Plaintiff and Plaintiff indicated that he was willing to try the procedure to see whether it would help him stay away from epidurals or surgical intervention. (Tr. 216.)

   **C. Testimony at the Hearing Before the ALJ**

*1. Plaintiff's Testimony*

At the March 22, 2011 hearing before ALJ Perez, Plaintiff testified that his back pain prevented him from working. (Tr. 37.)   Plaintiff indicated that he believed that his back problem may have been brought on by a sports-related injury during his early 20's. (Tr. 40.) Explaining the pain, Plaintiff stated:

> The pain that I have in my neck runs down my back and into my lower legs.  I have the burning sensation in my feet, and it is just — it affects me to the point where I can't sit or stand.  And maybe after ten or fifteen minutes I'll have to sit down, and either when I'm sitting constantly maneuver my positions, and after awhile of doing that I'll have to lie down and take my pain medication.

(Tr. 37.)   Plaintiff explained that he is constantly shifting positions. (*Id.*)   Plaintiff testified that every ten to fifteen minutes he needs to shift positions from a sitting to a standing position to ease his back pain. (*Id.*)  Moreover, Plaintiff testified that he needs to lie down approximately six to seven times per day because of his pain. (*Id.*)   Plaintiff indicated that he takes Vicodin, Psychobenzaprine and Gabapentin for his pain, but reported the following adverse side effects: lightheadedness, dizziness, and sometimes fatigue, confusion and difficulty concentrating. (Tr. 38.) Plaintiff reported taking Vicodin on average once per day, but sometimes twice depending on the severity of his pain symptoms. (*Id.*)   Plaintiff reported taking Gabapentin once per day. (*Id.*) Plaintiff also reported participating in physical therapy for his pain. (Tr. 44.)

Plaintiff reported that he has Type 2 diabetes and that he takes medications to control his diabetes, but that he is not on insulin. (Tr. 38, 43.) Plaintiff reported an average daily sugar of 155, with no neuropathy, no retinopathy, and no nephropathy. (Tr. 43.) Plaintiff also takes medications for his cholesterol and blood pressure. (Tr. 38.) Plaintiff reported adverse effects from his diabetes including fatigue, pain, numbness, tremors, and the inability to lift objects. (Tr. 39.)  Plaintiff

testified that the heaviest object that he could lift is a gallon of milk.  (Tr. 39-40.)  Plaintiff also

testified that the pain affects his ability to sleep.  (Tr. 40.)  Plaintiff testified that he was unable to

do any household chores, other than prepare quick 5-minute meals, use the dishwasher, or put dishes

in the dishwasher once per week.  (Tr. 40-41.)  With respect to daily activities, Plaintiff testified that

he was able to make quick meals, watch television, read, take his medication and make telephone

calls.  (Tr. 41.)  Plaintiff testified that he speaks to friends a lot by telephone and that they come to

his home to visit.  (Tr. 42.)  He also is able to go to church at least twice per month, however, he is

only able to stay for one hour of the three hour service because of his back pain.  (Tr. 42.)  Plaintiff

testified to seeing Dr. White for treatment of his back and for his diabetes once every three months

since 2005.  (Tr. 44.)  Plaintiff testified that he did not believe there was any job available where he

could work a 40-hour week.  (*Id*.)

### 2.  The Vocational Expert's Testimony

With respect to the exertional and skill levels of Plaintiff's past relevant work for the last

fifteen years, the VE stated:

> Mr. Wilson worked as a website developer.  It is sedentary and
> skilled.  A car prep worker/order is light and unskilled.  A customer
> service representative is sedentary and skilled.  A
> telemarketer/interviewer is sedentary and semi-skilled, and he did
> work as a cleaner which is light and semi-skilled.

(Tr. 45.)  Next, ALJ Perez asked the VE to consider the following hypothetical:

> Now taking the claimant's age, education, and work experience into
> account assume that such a person has an exertional limitation of
> lifting 20 pounds occasionally and 10 pounds frequently.  We have
> standing, sitting, and walking six hours, and moderately limited in
> pushing and pulling and handling with the upper and lower
> extremities, occasional climbing, balancing, stooping, crouching,
> kneeling, and crawling.

(Tr. 45-46.)  Given these restrictions, the ALJ asked the VE whether a person could be expected to

perform the claimant's past relevant work.  (Tr. 46.)  The VE responded that Plaintiff would be able

to perform the following past, relevant jobs: website developer, customer service representative, and

telemarketer/interviewer.  (*Id.*)

    Next, ALJ Perez changed the hypothetical and asked:

> If we reduce the exertional limitation of lifting to 10 pounds
> occasionally and 5 pounds frequently, and then give him a sit/stand
> option with standing and walking less than two hours, and minimum
> reaching in all directions, and moderately limited in pushing and
> pulling with the upper and lower extremities.  It looks like the
> sit/stand option would have to be for every fifteen minutes.  There
> would be no stooping, crouching, kneeling or crawling, and
> occasional climbing and balancing.

(Tr. 46.)  Given these restrictions, ALJ Perez asked the VE whether a person could be expected to

perform the claimant's past relevant work.  (*Id.*)   The VE testified, "the three positions could be

performed with the sit/stand option, and the other variables that you gave."  (Tr. 47.)

    To the extent that ALJ Perez concluded that Plaintiff was credible and the exertional

impairments were supported by the medical evidence, the ALJ asked the VE whether there were a

significant number of jobs existing in the local or state economy with sitting fifteen minutes,

standing fifteen minutes, walking 50 yards, and lifting a gallon of milk.  (Tr. 47.)  The VE responded

that such jobs existed, including: visual inspector, sorter packer, and visual surveillance monitor.

(*Id.*)  The VE testified that these jobs included a sit/stand option.  (*Id.*)

    ALJ Perez then questioned the VE whether there were a significant number of jobs in the

local or state economy considering Plaintiff's non-exertional limitations.  (Tr. 48.)  The VE testified:

"No."  When asked to explain, the VE stated:

> I believe the testimony regarding the need to lie down six to seven

8

> times per day in and of itself isn't work preclusive. I also believe he
> may have a difficult time completing even simple routine tasks with
> the side effects of the medication that he testified to, which would
> impact his ability to concentrate.

(Tr. 48.) The VE indicated that her responses were consistent with the DOT. (*Id*.)

## II. THE ADMINISTRATIVE LAW JUDGE'S FINDINGS

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage

earners who become disabled prior to expiration of their insured status) "are available only for those

who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines

"disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Social Security regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are
> denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments
> that "significantly limits . . . physical or mental ability to do basic work activities," benefits
> are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe
> impairment that is expected to last for at least twelve months, and the severe impairment
> meets or equals one of the impairments listed in the regulations, the claimant is conclusively
> presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied
> without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other

> work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Perez found that Plaintiff had not engaged in substantial gainful activity since Wilson's alleged disability onset date of December 20, 2009.  (Tr. 23.)  At step two, he found that Plaintiff had the following severe impairments: cervical and lumbar disc disease.  (*Id.*)  Next, the ALJ concluded that these impairments did not meet or medically equal a listed impairment.  (Tr. 23-24.)  Specifically, the ALJ concluded that the degenerative disk disease does not meet or medically equal a listed impairment because Plaintiff lacks the requisite motor and sensory deficits and there is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.  (*Id.*)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is restricted to only occasional climbing, stooping, crouching, balancing, kneeling, crawling and handling with moderate limitations in pushing and pulling with the upper and lower extremities.  (Tr. 24.)  At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a website developer (skilled/sedentary), customer service representative (skilled/sedentary), and as a telemarketer/interviewer (semi-skilled/sedentary).  (Tr. 26.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from the alleged onset date through the date of his disability decision, April 8, 2011.  (*Id.*)

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);  *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal

11

quotation marks omitted)).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." (internal quotation marks omitted)).

## IV.  ANALYSIS

Wilson appeals the Commission's decision on two grounds: first, that the ALJ erred by failing to give controlling weight to the opinions of his treating physician, Dr. White and, relatedly, that the ALJ failed to give "good reasons" for rejecting his opinion (Pl.'s Mot. Summ. J. at 4-9); and second, that the ALJ improperly discounted his statements about the severity of his back pain and his functional limitations.  (*Id.* at 10-12.)

### A.  The ALJ Violated the Treating Source Rule

Plaintiff argues that the ALJ failed to follow the treating source rule because he did not adequately explain how the record is inconsistent with the treating source opinion.  (*See* Pl.'s Mot. Summ. J. at 4-9.)  In assigning "little weight" to Dr. White's opinion, Plaintiff maintains that the ALJ's rationale for discounting the treating-source opinion was because "the totality of the records do not support such significant limitations."  (*Id*. (quoting Tr. 26).)  The Court agrees with Plaintiff that the ALJ did not adequately articulate why Dr. White's opinion was given "little weight."  Remand is therefore warranted.

The treating-source rule generally requires an ALJ to give deference to the opinion of a

claimant's treating source.  In particular, "[a]n ALJ must give the opinion of a treating source

controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and

laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the]

case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R.

§ 404.1527(d)(2)); *see also* S.S.R. 96-2p, 1996 WL 374188 (1996).  And where an ALJ finds that

a treating physician's opinion is not entitled to controlling weight, he must then consider and apply

the following non-exhaustive list of factors to determine how much weight to give the opinion: (1)

"the length of the treatment relationship and the frequency of examination," (2) "the nature and

extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to

support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the

specialization of the treating source."  *Id.*; 20 C.F.R. § 404.1527(c)(2).

In addition, and particularly relevant here, the treating-source rule contains a procedural,

explanatory requirement that an ALJ give "good reasons" for the weight given a treating-source

opinion.  *See e.g.*, *Wilson*, 378 F.3d at 544; *see also* S.S.R. 96-2p, 1996 WL 374188, at *5

(providing that a decision denying benefits "must contain specific reasons for the weight given to

the treating source's medical opinion, supported by the evidence in the case record").  The purpose

for this procedural requirement is two-fold:

> The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases, particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied.  The requirement also ensures that the
> ALJ applies the treating physician rule and permits meaningful
> review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal quotation marks omitted); *see also* S.S.R. 96-2p, 1996 WL 374188,

at \*5.

Here, with respect to Dr. White's opinion, the ALJ stated: "This opinion is given little weight as the totality of the records do not support such significant limitations." (Tr. 26.) This conclusory statement does not comply with the explanatory requirement of the treating-source rule because it does not identify which of Dr. White's findings are undermined by which evidence. *See Rife v. Comm'r of Soc. Sec.*, No. 11-1461, 2012 WL 2149794, at \*2 (6th Cir. June 13, 2012) (finding that ALJ's statement, "[i]n Dr. Voelpel's opinion, the restrictions identified by Dr. Hall (the treating family physician) are not supported by objective evidence," failed to provide "good reasons" for rejecting treating-source opinion); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion  gets the short end of the stick.").

In addition to failing to sufficiently explain why he gave Dr. White's opinion less than controlling weight, the ALJ also failed to adequately demonstrate that he considered and balanced the factors set forth in 20 C.F.R. § 404.1527(c)(2). *See Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (providing that, before rejecting a treating-source opinion, an ALJ must "conduct the balancing of factors to determine what weight should be accorded these treating source opinions"); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors . . . ."). For instance, there is no discussion about how frequently or for how long Plaintiff saw Dr. White, "the kinds and extent of examinations and testing the source has performed," or what evidence Dr. White offered to support his opinion. *See*

20 C.F.R. § 404.1527(c)(2).  Although there may be cases where an ALJ need not explicitly discuss each § 404.1527(c)(2) factor, *see Klimas v. Comm'r of Soc. Sec.*, 1:10-CV-666, 2012 WL 691702 (W.D. Mich. Mar. 1, 2012), the ALJ's statement that Dr. White's opinion "is given little weight as the totality of the records do not support such significant limitations" does not suffice even under this more lenient application of the treating-source rule.

The Commissioner argues that the ALJ properly cited evidence that was inconsistent with Dr. White's opinion thereby properly according Dr. White's opinion little weight. (Def's Mot. Summ. J. at 7-10.)  The Commissioner directs the Court's attention to "specific evidence that was inconsistent with Dr. White's opinion" as support for its argument of why the ALJ could properly discount Dr. White's opinion.  (*Id*. at 8-9.)  For example, the Commissioner "note[s] that treatment records from Dr. White chronicled regular complaints of neck and back pain (Tr. 25), but that an EMG was 'normal' and revealed 'no evidence of radiculopathy or neuropathy.'" (*Id*. at 8 (citing Tr. 25, citing Tr. 206)).)  In similar manner, the Commissioner proceeds to cite several pieces of evidence that allegedly contradict Dr. White's opinion.  (Def.'s Mot. Summ. J. at 8-9.)  The problem with the Commissioner's argument is that even though the ALJ cited evidence that was inconsistent with Dr. White, the ALJ made no attempt to identify which of Dr. White's findings were undermined by which evidence as plainly required by this Circuit.  *See Rife* 2012 WL, at *2, *Friend*, 375 F. App'x at 552.  It is not for the Court to undertake this analysis in the first instance.

Moreover, while the Commissioner would have this Court consider the ALJ's opinion in as a whole rather than in piecemeal fashion, the ALJ simply did not provide the "good reasons" anywhere in his opinion for the Court to consider.  Therefore, the cases cited by the Commissioner urging such an interpretation are inapposite here.  (Def.'s Mot. Summ. J. at 10 (citing *Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 510-11 (6th Cir. 2006); *Walker v. Soc. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Bradford v. Sec'y of the Dep't of Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986).)   As noted in *Wilson*, without the "good reasons" as required by S.S.R. 96-2p, this Court is simply unable to determine which of Dr. White's findings are undermined by the evidence cited by the ALJ, or whether the evidence is substantial as compared with the other evidence of record.   For these reasons, remand is warranted.

### B.  The ALJ Did Not Adequately Explain His Credibility Assessment

Wilson next argues that the ALJ erred when he disregarded his subjective complaints of pain solely because they were not substantiated by objective medical evidence in direct contradiction to Social Security ruling 96-7p.  (Pl.'s Mot. Summ. J. at 10-12.)  Wilson specifically contends that the ALJ concluded that his impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 25.)  Yet, the ALJ concluded that Wilson's descriptions of those symptoms were not credible "to the extent they are inconsistent with the above residual functional capacity assessment."  (*Id.*) The ALJ further stated that Wilson's "allegations have been considered and found inconsistent with the objective medical evidence in the record and therefore not entitled to controlling weight."  (Tr. 26.)  Wilson argues that the ALJ's failure to apply any of the factors specified in the case law and Social Security ruling 96-7p are error.

While responding with an argument that the ALJ made the required credibility showing, even the Commissioner concedes that the ALJ's analysis is perhaps "not well articulated."  (Def.'s Mot. Summ. J. at 12.)  It is clear to the Court that the ALJ's analysis falls well short of what is required under Rule 96-7p.

It is well-settled that an ALJ must sufficiently explain his credibility assessment and the

explanation must be supported by substantial evidence.  In particular, at step two of the two-step

framework for analyzing credibility, an ALJ must evaluate the intensity, persistence, and functional

limitations of those symptoms by considering objective medical evidence and other evidence,

including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other

symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than

medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or

other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain

or other symptoms.  20 C.F.R. § 404.1529(c); Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4, at *5-8

(1996); *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (2011).  The ALJ's "decision must

contain specific reasons for the finding on credibility, supported by the evidence in the case record,

and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight."  S.S.R.

96-7p, 1996 WL 374186 at *2.

 Here, the ALJ failed to provide specific explanation supported by evidence in the case record

for discounting Plaintiff's statements of pain.  For example, the ALJ did not explain why he

discredited Plaintiff's testimony that he had to shift positions every ten to fifteen minutes from a

sitting to a standing position to ease his back pain (Tr. 37), that he needed to lie down approximately

six to eight times every day because of his back pain (*id*.), that he experienced lightheadedness,

dizziness, and sometimes fatigue, confusion and difficulty concentrating due to the side effects of

his pain medication (Tr. 38), that he reported fatigue, numbness, tremors and a decreased ability to

lift objects as a result of his diabetes (Tr. 39), that the heaviest object he could lift was a gallon of

milk (Tr. 39-40), that he had a deceased ability to sleep due to his pain (Tr. 40), and that his pain

prohibited him from engaging in many daily activities (Tr. 41.)

The Commissioner argues that any mistake in this regard is harmless because the VE

testified that a significant number of jobs were available even if the ALJ had deemed Plaintiff to be

credible.  The Court disagrees.  On this point, ALJ Perez asked the VE  if he found Plaintiff to be

credible and the exertional impairments described were supported by substantial evidence, were

there a substantial number of jobs existing in the local or state economy.  (Tr. 47.)  The VE

responded such jobs existed.  However, when the ALJ asked the VE to incorporate Plaintiff's non-

exertional limitations, the VE testified that there were not a significant number of jobs in the local

or state economy.  (Tr. 48.)  The VE further testified on this point:

> I believe the testimony regarding the need to lie down six to seven
> times per day in and of itself isn't work preclusive.  I also believe he
> may have a difficult time completing even simple routine tasks with
> the side effects of the medication that he testified to, which would
> impact his ability to concentrate.

(*Id.*)

Therefore, the ALJ's error is not harmless, and the Court recommends remand on this issue

as well to give the ALJ an opportunity to more adequately explain his credibility determination in

accordance with S.S.R. 96-7p.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court RECOMMENDS that Plaintiff's Motion for

Summary Judgment (Dkt. 9) be GRANTED to the extent it seeks a remand, that Defendant's Motion

for Summary Judgment (Dkt. 12) be DENIED, and that, pursuant to 42 U.S.C. § 405(g), the decision

of the Commissioner of Social Security be REMANDED.

18

## VI.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections aparty may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge.  E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  November 19, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 19, 2012.

s/Jane Johnson
Deputy Clerk

19